JESÚS BONES CRUZ, peticionario, *v.* HON. ISMAEL L. PURCELL SOLER, REGISTRADOR DE LA PROPIEDAD, SECCIÓN DE GUAYAMA, recurrido.

*Número:* RG-2015-0007      *Resuelto:* 9 de marzo de 2016

*Ángel Luis Montañez Morales*, abogado del peticionario; *Ismael L. Purcell Soler*, registrador de la propiedad, Sección de Guayama, recurrido.

## SENTENCIA

Comparece Jesús Bones Cruz (en adelante, peticionario) y nos solicita que revoquemos una recalificación realizada por el Registrador de la Propiedad de la Sección de Guayama, Hon. Ismael L. Purcell Soler. En esta, el Registrador denegó la anotación del derecho a hogar seguro solicitado por el peticionario al amparo de la Ley Núm. 195-2011, conocida como Ley de Protección del Hogar, 31 LPRA secs. 1858–1858k, toda vez que uno de los cotitulares de la propiedad no autorizó el Acta Notarial mediante la cual se le requirió la inscripción del derecho de hogar seguro.

Evaluados los autos, así como los alegatos de ambas partes, resolvemos que el Registrador de la Propiedad actuó conforme a lo resuelto por este Tribunal en *Rivera García v. Registradora*, 189 DPR 628 (2013), por lo cual procede confirmar la calificación.

A continuación, exponemos el marco fáctico que dio génesis a la controversia de autos.

I

Los hechos de este caso son sencillos. El peticionario reside en un inmueble sito en el municipio de Arroyo. Según consta en el Registro de la Propiedad, dicho inmueble

pertenece en proporción de cincuenta por ciento (50%) al peticionario y a la Sra. Alicia Figueroa Rosa (en adelante, Figueroa Rosa).

Así las cosas, el peticionario le requirió al notario público Ángel Luis Montañez Morales que autorizara un Acta Notarial para que se anotara en el Registro de la Propiedad su derecho a hogar seguro conforme a la Ley Núm. 195-2011, *supra*. El Acta Notarial fue otorgada el 3 de marzo de 2012, mediante la Escritura Número Quince (15), intitulada "Acta para anotar derecho a hogar seguro" (en adelante, Acta Notarial o Escritura Núm. 15).([1])

El 19 de diciembre de 2013 se presentó el Acta Notarial en el Registro de la Propiedad, Sección de Guayama.([2]) Luego de la correspondiente calificación, el Registrador de la Propiedad denegó la inscripción de la Escritura Núm. 15 y el 8 de octubre de 2015 notificó al notario presentante, licenciado Montañez Morales, las faltas siguientes:

> Según el Registro[,] la finca consta inscrita a favor de Alicia Figueroa Rosa y Jesús Bones Cruz, solteros, en una proporción de 50% cada uno, por lo que ambos titulares deben comparecer a consentir la transacción.
>
> Cuando la propiedad tiene más de un titular[,] todos tienen que comparecer a la autorización del Acta Notarial en la que se reclama el Derecho de Hogar Seguro. Art[.] 9 de la Ley 195 [(]31 [LPRA] secci[ones] 1858–1858k. Antonia Rivera v. Namyr I. Hernández Sánchez, 2013 T[S]PR 107. Art. 68 [de la]Ley Hipotecaria. Apéndice, pág. 9.

---

([1]) La propiedad inmueble sobre la cual el peticionario reclamó el derecho a hogar seguro está descrita en la Escritura Número Quince (15) de la forma siguiente:

"Rústica: Parcela de terreno identificada con el numero D cuat[r]o (D-4) en el plano de inscripción de Villas de Arroyo, radicada en el Barrio Ancones del término municipal de Arroyo, Puerto Rico[,] con una cabida superficial de cuatrocientos ochenta punto veinte[ú]n (480.21) metros cuadrados, en lindes por el norte con parcela identificada n[ú]mero "D" tr[e]s (D-3) por el sur con canal de riego de Autoridad de Energ[í]a El[é]ctrica de Puerto Rico, por el este con calle n[ú]mero uno (#1)[,] por el oeste con parcela identificada n[ú]mero "D" -ocho (D-8).----------------------------------- Consta inscrita al asiento 70, diario 434,-------------------------------------------------- Enclava una estructura dedicada a vivienda de dos (2) plantas[.] En la planta baja consta de sala-comedor-cocina y un baño[,] y en la planta alta tres (3) cuartos dormitorios y dos (2) baños". Apéndice, pág. 2.

([2]) Presentada al Asiento 445, Diario de Operaciones, Libro 656 del Registro de la Propiedad, Sección de Guayama. Íd., pág. 5.

Insatisfecho con el proceder del Registrador de la Propiedad, el 22 de octubre de 2015 el peticionario presentó a través de su representación legal un Escrito de Recalificación. En resumen, adujo que la Ley Núm. 195-2011, *supra*, provee un derecho de hogar seguro para todo individuo domiciliado en Puerto Rico. Asimismo, arguyó que la postura del Registrador carecía de méritos, toda vez que la solicitud de inscripción del derecho de hogar seguro no implicaba una pérdida, traslación de dominio o cambio de participación de la titularidad del inmueble y, en consecuencia, no se requiere consentimiento de todos los titulares. Como fundamento a su solicitud de recalificación citó la *derogada* Ley Núm. 87 de 12 de marzo de 1936, conocida como Ley para Establecer el Derecho de Hogar Seguro y el principio de equidad.

El 10 de diciembre de 2015, el Registrador de la Propiedad denegó el Escrito de Recalificación presentado por el peticionario. Sostuvo que el derecho a hogar seguro se rige por la Ley Núm. 195-2011, *supra*, y es en ese estatuto que se establecen las formas en que los propietarios pueden reclamar su derecho a hogar seguro. Dispuso, además, que de acuerdo con el Artículo 9 de esta ley, 31 LPRA sec. 1858f, y las expresiones de este Tribunal en *Rivera García v. Registradora*, supra, era necesario que todos los cotitulares de un bien inmueble autorizaran el Acta Notarial en la cual se reclamó el derecho de hogar seguro.

Inconforme con la determinación final del Registrador de la Propiedad, el 28 de diciembre de 2015, el peticionario presentó el Recurso Gubernativo[3] de autos y alegó que el Registrador cometió el error siguiente:

> Cometió error el Registrador de la Propiedad, Sala de Guayama en su calificación y recalificación de la escritura sobre Hogar Seguro al requerir la firma de la Sra. Alicia Figueroa Rosa.

---

[3] Conjuntamente con el Recurso Gubernativo, el peticionario presentó la Moción de Solicitud de Orden Provisional en Auxilio de Jurisdicción. Argumentó allí que es

Con el beneficio de la comparecencia del Registrador de la Propiedad, estamos en posición de resolver sin ulterior trámite.

## II

El derecho a hogar seguro no es otra cosa que una limitación a lo dispuesto en el Art. 1811 del Código Civil en cuanto a que "[d]el cumplimiento de las obligaciones responde el deudor, con todos sus bienes presentes y futuros". 31 LPRA sec. 5171. *Rivera García v. Registradora*, supra, pág. 639. Esa limitación tradicionalmente se tradujo en una cuantía de dinero que estaría exenta de ser embargada por los acreedores.

Sin embargo, mediante la Ley Núm. 195-2011, *supra*, la Asamblea Legislativa cambió ese paradigma convirtiendo el derecho de hogar seguro en una protección al disfrute de un bien inmueble específico, dejando atrás la protección de una cantidad de dinero no sujeta a embargo.[4] Véase *Rivera García v. Registradora*, supra.

Así pues, mediante la Ley Núm. 195-2011, *supra*, la Asamblea Legislativa creó el derecho de hogar seguro como un derecho personal con trascendencia real, por lo que es inscribible en el Registro de la Propiedad. De un lado, el derecho a hogar seguro tiene un efecto real, toda vez que protege la finca misma. *Rivera García v. Registradora*, supra, pág. 639. A su vez, crea un efecto *erga omnes*, "ya que el derecho a hogar seguro remueve del tráfico comercial la propiedad protegida, quedando así fuera del alcance de los

---

imprescindible que este Tribunal emita una Orden dirigida al Registrador de la Propiedad con el propósito de impedirle que inscriba cualquier documento en la finca en la que desea que se inscriba el derecho de hogar seguro. Según el peticionario, ello es necesario para evitar causarle daño y que pueda hacer efectiva la decisión que emita este Tribunal.

[4] Como cuestión de Derecho, mediante la Ley Núm. 195-2011, la Asamblea Legislativa derogó la Ley Núm. 87 de 13 de mayo de 1936, según enmendada, conocida como Ley para Establecer el Derecho a Hogar Seguro. Véase Art. 16 de la Ley 195-2011, *supra*.

acreedores, con excepción de aquellos dispuestos en el Art[ículo] 4 de la Ley Núm. 195, *supra*[, 31 LPRA sec. 1858a]". Íd.

El Artículo 9 de la Ley Núm. 195-2011, *supra*, establece dos (2) maneras en que los propietarios pueden reclamar el derecho de hogar seguro. En primer lugar, la persona puede reclamarlo en el mismo acto de adquisición del título del bien inmueble. En segundo lugar, en aquellos casos en los que la finca esté inscrita a nombre del titular en el Registro de la Propiedad, el estatuto dispone, en lo pertinente, lo siguiente:

> En los casos donde la finca estuviere ya inscrita a nombre de dicho individuo o jefe de familia, bastará que el propietario o *propietarios* de la finca otorgue(n) un acta ante notario público, donde se haga constar que la finca tiene carácter de hogar seguro, para que el Registrador de la Propiedad consigne tal carácter en nota marginal de la inscripción correspondiente. (Énfasis suplido). 31 LPRA sec. 1858f.

En *Rivera García v. Registradora*, supra, este Tribunal precisamente interpretó el artículo antes citado. En esa ocasión, la peticionaria presentó al Registro de la Propiedad un acta de hogar seguro que iba a ser anotada en la finca donde se encontraba su hogar conyugal. Esta finca pertenecía a la comunidad de herederos de su fenecido esposo, cuyos comuneros consistían en sus hijos y la peticionaria. La Registradora de la Propiedad denegó la inscripción del acta notarial porque adujo que todos los coherederos y cotitulares debían consentir a la constitución del derecho a hogar seguro. Razonó que el consentimiento expreso de los coherederos era necesario, toda vez que estos perderían el derecho a solicitarlo en sus respectivas propiedades en conformidad con el Artículo 10 de la Ley Núm. 195-2011, *supra*, 31 LPRA sec. 1858g.

En efecto, ante esos hechos, resolvimos que el Artículo 9 de la Ley Núm. 195, *supra*, "exige que cuando una propiedad tiene más de un titular registral, todos tienen que comparecer a la autorización del Acta Notarial en la que se

reclama el derecho a hogar seguro". *Rivera García v. Registradora*, supra, pág. 641.

## III

En el presente caso, es un hecho incontrovertido que la propiedad que el peticionario pretendió proteger con el derecho a hogar seguro consta como inscrita a nombre del peticionario y de la señora Figueroa Rosa, ambos como solteros, en proporción de cincuenta por ciento (50%). Sin embargo, el peticionario compareció individualmente a la autorización del Acta Notarial en la que requirió que se anotara su derecho a hogar seguro. Por tal razón, el Registrador de la Propiedad concluyó correctamente que el Acta Notarial no cumplió con los requisitos estatutarios establecidos en la Ley Núm. 195-2011, *supra*, para la inscripción del derecho a hogar seguro en el Registro de la Propiedad.

Tal y como resolvimos en *Rivera García v. Registradora*, supra, págs. 642–643, cuando una propiedad pertenece a más de un titular registral, es necesario que todos los cotitulares comparezcan a la autorización del Acta Notarial en la que se reclama el derecho a hogar seguro. Así pues, en este caso era necesario que la señora Figueroa Rosa compareciera y autorizara el Acta Notarial cuya calificación se revisa en el presente caso.

Ante dicha realidad jurídica, el peticionario argumenta que no le es posible obtener el consentimiento de la señora Figueroa Rosa toda vez que ella lo "abandonó". Recurso Gubernativo, pág. 6. Aduce que "le indicaron que ella se había trasladado a los Estados Unidos de Norteamérica [...]". Íd. Sin embargo, el propio peticionario admite que estos "datos *no le constan de propio conocimiento*[,] por lo que no puede dar fe de ello". (Énfasis suplido). Íd.

Basta, simplemente, señalar que hemos reiterado que en esta jurisdicción, "meras alegaciones no constituyen prueba". *U.P.R. Aguadilla v. Lorenzo Hernández*, 184 DPR

1001, 1013 (2012). Véanse: *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 509–510 (2011); *Alberty v. Bco. Gub. de Fomento*, 149 DPR 655, 671 (1999). Además, este asunto no fue planteado en el Escrito de Recalificación, por lo que sus méritos tampoco pueden ser revisados por este Tribunal. Véase Art. 77 de la Ley Núm. 198 de 8 de agosto de 1979, conocida como Ley Hipotecaria y del Registro de la Propiedad, 30 LPRA sec. 2280 (en adelante, Ley Hipotecaria) (El recurso gubernativo "no podrá incluir objeciones a la calificación del documento [...] que no hubiese incluido al radicar su escrito solicitando la recalificación").

Por otro lado, el peticionario arguye que la inscripción de su derecho a hogar seguro no requiere el consentimiento de la señora Figueroa Rosa toda vez que ello "no implica una pérdida o traslación del dominio ni altera el título de la propiedad del 50% indiviso que posee la Sra. Alicia Figueroa Rosa [...] y lo único que hace es proteger a una familia que tiene una legítima necesidad". Recurso Gubernativo, págs. 4 y 7. Según el peticionario, esta postura es más afín con los propósitos de la Ley Núm. 195-2011, *supra*, ya que facilita extender el derecho al cónyuge supérstite y a sus herederos.

En *Rivera García v. Registradora*, supra, pág. 633, la peticionaria argumentó de manera similar que no existía objeción alguna que los cotitulares pudieran anteponer en contra de la inscripción del derecho a hogar seguro. Sin embargo, resolvimos expresamente que a pesar de que el derecho reconocido en la Ley Núm. 195-2011, *supra*, es amplio y abarcador, este *no constituye un mero acto de administración.* Íd., págs. 641–642. Por el contrario, "[s]e trata de un derecho que en cierto sentido remueve a la propiedad del tráfico jurídico cuando se trate del cobro exclusivamente de *deudas*". (Énfasis en el original). Íd., pág. 641. Es importante reiterar que es el Artículo 9 de la Ley Núm. 195-2011, *supra*, que exige que todos los cotitulares de una propiedad autoricen la inscripción del derecho a

hogar seguro en el Registro de la Propiedad.(⁵) De esa forma, en este caso el Registrador de la Propiedad cumplió con el mandato del Derecho Positivo encarnado en la propia Ley Núm. 195-2011, *supra*.

Por último, el peticionario arguye que su postura es afín con los propósitos generales que sirvieron como base para la Ley Núm. 195-2011, *supra*. En específico, sostiene que el propósito de la referida legislación es que cada ciudadano cuente con una protección básica contra el riesgo de ejecución. Véase Recurso Gubernativo, pág. 5.

Sin embargo, es suficiente remitir al peticionario a los principios generales de interpretación y aplicación estatutaria dispuestos en el título preliminar de nuestro Código Civil. El Artículo 14 del Código Civil dispone que cuando la ley es clara, "la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu". 31 LPRA sec. 14. *Cordero et al. v. ARPe et al.*, 187 DPR 445, 456 (2012); *Bomberos Unidos v. Cuerpo de Bomberos et al.*, 180 DPR 723, 750 (2011), citando a *Pueblo v. Castro Muñiz*, 118 DPR 625, 650 (1987). Es precisamente la acción *vedada* en esa disposición legal la que el peticionario nos invita a realizar. En consecuencia, carece de mérito el planteamiento del peticionario.(⁶)

Por todo lo anterior, colegimos que era necesaria la comparecencia y autorización de la señora Figueroa Rosa al

---

(⁵) No obstante, en *Rivera García v. Registradora*, 189 DPR 628, 642 (2013), expresamos que en casos en los que no existe

"[...] evidencia del consenso entre los comuneros para reconocer el derecho a hogar seguro de uno de ellos, siempre se puede acudir al tribunal con el propósito de que se reconozca el derecho a hogar seguro al amparo del Art. 3 de la Ley Núm. 195-2011, *supra*, y se ordene su anotación en el Registro de la Propiedad".

(⁶) El peticionario sostiene, además, que este Tribunal debe revocar lo resuelto en *Rivera García v. Registradora*, supra, ello a base de ciertas enmiendas que se pretendieron realizar a la Ley Núm. 95-2011, *supra*, mediante el Proyecto de la Cámara 1638, presentado el 23 de enero de 2014 en la Decimoséptima Asamblea Legislativa, Cuarta Sesión Ordinaria, y el Informe rendido por la Comisión de lo Jurídico ante dicho cuerpo legislativo de 11 de noviembre de 2014.

No obstante, este planteamiento tampoco fue levantado en el Escrito de Recalificación. Véase Art. 77 de la Ley Hipotecaria, 30 LPRA sec. 2280. Además, si bien es cierto que la Asamblea Legislativa tiene amplios poderes para aprobar y enmendar leyes, la realidad es que el P. de la C. 1638 *no ha sido aprobado* por la Asamblea Legislativa.

Acta Notarial mediante la cual el peticionario requirió que se anotara el derecho a hogar seguro en el Registro de la Propiedad. En consecuencia, actuó correctamente el Registrador de la Propiedad y no se cometió el error señalado.(⁷)

## IV

De acuerdo con los fundamentos expuestos anteriormente, *se confirma la determinación del Registrador de la Propiedad Sección de Guayama, la cual denegó la inscripción del derecho a hogar seguro del peticionario, reclamado en la Escritura Núm. 15 intitulada "Acta para anotar derecho a hogar seguro", otorgada el 3 de marzo de 2012 ante el notario Ángel Luis Montañez Morales. Asimismo, se deniega la Moción de Solicitud de Orden Provisional en Auxilio de Jurisdicción.*

Así lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disintió con una opinión escrita.

*(Fdo.)* Juan Ernesto Dávila Rivera
*Secretario del Tribunal Supremo*

---

(⁷) Asimismo carece de mérito la Moción de Solicitud de Orden Provisional en Auxilio de Jurisdicción presentada por el peticionario. Mediante la referida moción, el peticionario nos solicita que expidamos una orden para prohibirle al Registrador de la Propiedad, Sección de Guayama, llevar a cabo su deber ministerial de calificar e inscribir cualquier documento que fuese presentado en la finca en cuestión, hasta tanto este Tribunal resuelva el Recurso Gubernativo presentado en autos.

Sin embargo, la realidad es que la Orden solicitada es innecesaria, toda vez que uno de los efectos de la denegación de la recalificación es que el Registrador de la Propiedad deberá realizar una "anotación preventiva sobre la finca afectada, en la cual expresará los motivos legales para tal anotación, que deberán ser los mismos contenidos en la notificación de la calificación". Art. 71 de la Ley Hipotecaria, *supra*, 30 LPRA sec. 2274. Véase Art. 77 de la Ley Hipotecaria, *supra* (en el término de cinco días a partir de la notificación del Recurso Gubernativo, el Registrador de la Propiedad tomará nota de su interposición al margen de la anotación preventiva de denegatoria).

Es necesario señalar que la vigencia del asiento de presentación o de la anotación preventiva queda automáticamente "prorrogada hasta la resolución definitiva del asunto por parte del Tribunal Supremo [...]". L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 2da ed., San Juan, Jurídica Editores, 2002, pág. 323. Véanse: Arts. 83.2–83.5 y 84.3 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, según enmendado, Reglamento Núm. 2674, Departamento de Estado, 9 de julio de 1980. Véase, además, *SLG Pérez Rivera v. Registradora*, 189 DPR 729 (2013).

— O —

Opinión disidente emitida por la Jueza Presidenta Oronoz Rodríguez.

La Mayoría de este Tribunal ha decidido reiterar en este caso la norma errada establecida en *Rivera García v. Registradora*, 189 DPR 628 (2013). Al así hacerlo, desaprovechamos la oportunidad de corregir el curso tomado en dicho caso y atemperar nuestra jurisprudencia a la verdadera intención legislativa y política pública de la Ley Núm. 195-2011 (31 LPRA secs. 1858–1858k). Esto es, garantizar que toda persona, jefe o jefa de familia domiciliado en Puerto Rico obtenga una protección que cobije la posesión y el disfrute de su residencia principal contra el riesgo de perderla como consecuencia de una sentencia en su contra para obtener el cobro de una deuda. Por entender que la Ley Núm. 195-2011, *supra*, no requiere que todos los copropietarios de un inmueble comparezcan al otorgamiento del acta de hogar seguro para lograr su inscripción en el Registro de la Propiedad, disiento.

I

Los hechos de esta controversia resultan fáciles de exponer. El Sr. Jesús Bones Cruz otorgó la Escritura Pública Núm. 15 de 3 de marzo de 2012 ante el notario público Ángel Luis Montañez Morales. En la misma, hizo constar su deseo de constituir su derecho a hogar seguro sobre una propiedad compuesta por una estructura de dos pisos utilizada como vivienda, la cual ubica en el barrio Ancones, en el municipio de Arroyo.[1] Según consta en la minuta de presentación del Diario de Operaciones del Registro de la Propiedad, dicha escritura pública se presentó al Registro de la Propiedad, Sección de Guayama, el 19 de diciembre de 2013.

---

[1] Apéndice, págs. 2–3.

Calificado el documento, el Hon. Ismael L. Purcell Soler, Registrador de la Propiedad, notificó las siguientes faltas: "Según el Registro[,] la finca consta inscrita a favor de Alicia Figueroa Rosa y Jesús Bones Cruz, solteros, en una porción de 50% cada uno, por lo que ambos titulares deben comparecer a consentir la transacción".(²) El Registrador fundamentó su denegación en el hecho de que la finca constaba inscrita a favor de más de un propietario y todos tenían "que comparecer a la autorización del Acta Notarial en la que se reclama el Derecho de Hogar Seguro".(³)

Inconforme con esta determinación, el señor Bones Cruz presentó un escrito de recalificación. Argumentó que el derecho a hogar seguro establecido por la Ley Núm. 195-2011, *supra*, era de carácter *sui generis*, por lo que la copropietaria no podía objetar la inscripción de dicho derecho a favor del recurrente y que su participación en el bien inmueble no se veía afectada. Además, señaló que la inscripción del derecho a hogar seguro no representaba una pérdida o transferencia de dominio ni alteraba el título de propiedad de la codueña. No obstante, el Registrador de la Propiedad denegó la recalificación solicitada.

Así las cosas, el señor Bones Cruz presentó el Recurso Gubernativo de epígrafe. Señaló que erró el Registrador de la Propiedad al negarse a recalificar el documento presentado y requerir el consentimiento de la copropietaria para inscribir su derecho a hogar seguro. Atendido el recurso, decidimos expedir.(⁴)

## II

El legislador puertorriqueño ha reconocido el derecho a la vivienda como uno de carácter fundamental para nues-

---

(²) Apéndice, pág. 5.

(³) Íd.

(⁴) En su comparecencia ante este Tribunal, el señor Bones Cruz señaló, por primera vez, que su excompañera, cotitular de la propiedad en controversia, se mudó a Estados Unidos y que se le ha hecho imposible dar con su paradero.

tro Pueblo, el cual debe estar revestido de la mayor protección posible. Así, desde temprano en el siglo xx, el legislador estableció mediante la vía estatutaria mayores garantías para la propiedad residencial de las personas, de manera tal que en caso de un embargo y posterior venta judicial de la propiedad, cierta cantidad de dinero quedara protegida de los acreedores.[5]

Este esquema, sin embargo, cambió con la aprobación de la Ley Núm. 195-2011, *supra*, conocida como la "Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar" (Ley de Protección del Hogar). Tal y como reconocimos en *Rivera García v. Registradora*, supra, la nueva legislación no se enfocó en proteger cierta cantidad de dinero, sino que estableció disposiciones dirigidas a proteger la propiedad física del titular o los titulares. *Rivera García v. Registradora*, supra, pág. 636. Como reconoció la Asamblea Legislativa, para el puertorriqueño, el hogar o residencia principal constituye una aspiración personal de primer orden y, en muchos de los casos, representa casi la totalidad de su patrimonio y el principal bien que puede ofrecer a sus herederos.[6]

La Ley de Protección del Hogar crea un derecho sustantivo a favor de todo individuo, jefe o jefa de familia, a poseer y disfrutar, en concepto de hogar seguro, de una propiedad que consista de un predio de terreno y la estructura enclavada en éste, o una residencia bajo el Régimen de Propiedad Horizontal. Ello, siempre que dicha propiedad le

---

[5] En 1903, la Asamblea Legislativa aprobó la Ley para Definir el Hogar Seguro y para E[xe]ntarlo de una Venta Forzosa, la cual protegía quinientos dólares de cualquier potencial embargo y posterior venta judicial de la propiedad que un demandado utilizara como vivienda. Posteriormente, la Asamblea Legislativa aprobó la Ley Núm. 87 de 3 de mayo de 1936, la cual derogó la anterior legislación y estableció una protección de hasta mil quinientos dólares sobre la propiedad sujeta a ejecución. La cantidad protegida de un potencial embargo y venta judicial no fue alterada hasta el 2003, cuando la Asamblea Legislativa aprobó la Ley Núm. 116-2003 y estableció el margen en quince mil dólares. 31 LPRA ants. secs. 1851–1857.

[6] "Así, la protección del hogar es de gran importancia para todos en Puerto Rico, desde el joven que con tanto anhelo compra su primera propiedad hasta el individuo retirado, que tanto luchó para mantener su propiedad". Exposición de Motivos de la Ley Núm. 195-2011, Leyes de Puerto Rico 2231.

pertenezca legalmente y sea utilizada por esa persona o por su familia como residencia principal exclusivamente. 31 LPRA sec. 1858. Esta protección del hogar o domicilio principal será efectiva en contra de cualquier embargo, sentencia o ejecución ejercitada para el pago de todas las deudas, excepto de aquellas específicamente establecidas en la Ley. 31 LPRA sec. 1858b. El derecho a hogar seguro que establece la Ley Núm. 195-2011 no depende de la inscripción registral para su efectividad, puesto que es un derecho sustantivo creado por legislación a favor del individuo. Así se reconoce en la propia ley al establecer que "[e]l hecho de que una finca no esté inscrita en el Registro de la Propiedad o que el derecho a hogar seguro no esté inscrito o anotado en el Registro de la Propiedad, en nada afecta el derecho de hogar seguro que en ella tenga su propietario, siempre y cuando el derecho sea levantado oportunamente [...]". 31 LPRA sec. 1858h. Lo anterior significa que la inscripción del derecho a hogar seguro en el Registro de la Propiedad es simplemente declarativa y no de carácter constitutivo, como lo sería en el caso de una hipoteca.[7]

Lo anterior es de suma importancia al analizar la controversia pues, como señala el Prof. Michel Godreau, "[e]s principio registral que si el derecho sustantivo es claro, lo relativo a su inscripción tiene que ajustarse". M.J. Godreau Robles, *Derechos reales* [: análisis del término 2013–2014], 84 Rev. Jur. UPR 709, 716 (2015). Respecto al proceso de inscripción del derecho a hogar seguro, la Ley de Protección del Hogar establece en su Art. 9 dos vías para completarlo. En primer lugar, el o los adquirentes de una propiedad pueden hacer constar en la escritura de compraventa su deseo de constituir sobre la propiedad adquirida

---

[7] Tal y como explica el tratadista Luis R. Rivera Rivera, "[e]n Puerto Rico la inscripción es declarativa en la mayoría de los casos, pues los derechos reales sobre inmuebles se constituyen, modifican, transmiten o extinguen, con eficacia jurídica, fuera del registro en virtud de las normas del Derecho civil". L.R. Rivera Rivera, *Derecho registral inmobiliario puertorriqueño*, 3ra ed., San Juan, Jurídica Editores, 2012, pág. 42.

su derecho a hogar seguro y el Registrador así lo anotará en el folio que corresponda. La segunda vía de inscripción ocurre cuando la propiedad sobre la que se quiere constituir el derecho a hogar seguro ya consta inscrita a favor del o los titulares. En ese caso, "bastará que el propietario o propietarios de la finca otorgue(n) un acta ante notario público, donde se haga constar que la finca tiene carácter de hogar seguro, para que el Registrador de la Propiedad consigne tal carácter en una nota marginal de la inscripción correspondiente". 31 LPRA sec. 1858f.

Amparados en el lenguaje anterior, la Mayoría en *Rivera García v. Registradora*, supra, estableció que la Ley de Protección del Hogar exige que cuando una propiedad tenga más de un titular registral, todos tienen que comparecer a la autorización del Acta Notarial en la que se reclama el derecho a hogar seguro. Íd., pág. 641. Dicha determinación, sin embargo, parte de dos errores fundamentales que es preciso aclarar. Primero, en *Rivera García v. Registradora*, supra, la Mayoría del Tribunal estableció que el derecho a hogar seguro es un derecho personal que, una vez tiene acceso al Registro de la Propiedad, "adquiere una dimensión real y otra *erga omnes*". Íd., pág. 639. Es por esta razón, según el razonamiento mayoritario, que era preciso requerir que comparezcan todos los titulares al otorgamiento del acta de hogar seguro toda vez que "el derecho que reconoció la Asamblea Legislativa [...] es amplio y abarcador y tiene efectos de carácter real en cuanto a la propiedad. Se trata de un derecho que en cierto sentido remueve a la propiedad del tráfico jurídico cuando se trate del cobro exclusivamente de deudas". (Énfasis suprimido). Íd., pág. 641. Asimismo, el segundo error que cometió la Mayoría en *Rivera García v. Registradora*, supra, fue caracterizar la inscripción del derecho de hogar seguro como un acto de dominio o alteración que requiere la comparecencia de todos los titulares de la propiedad. Íd., págs. 641–642.

Resulta equivocado establecer que la naturaleza real o *erga omnes* del derecho reconocido por la Ley Núm. 195-2011 surge una vez éste tiene acceso al Registro de la Propiedad. Como vimos, la inscripción del derecho a hogar seguro es meramente declarativa. La protección especial que le quiso conceder el legislador a la residencia principal del individuo es lo que hace que este tenga transcendencia real y *erga omnes*, y no su acceso al Registro. Véase M.J. Godreau Robles, *Un esquema para el análisis de problemas de derecho civil patrimonial,* 55 (Núm. 1) Rev. Jur. UPR 9 (1986). Así, que el bien inmueble sujeto al derecho a hogar seguro esté fuera del tráfico comercial para el cobro de toda deuda no contemplada en la Ley Núm. 195-2011 es una consecuencia de la propia legislación. Se trata de la protección que le quiso otorgar el legislador a la residencia principal de todo individuo, por lo que no depende de si el derecho está inscrito para tener transcendencia real. Esto ocurre sin importar que, en el caso de una propiedad ya inscrita a nombre de más de un titular, sólo uno de los titulares solicite la inscripción de su derecho a hogar seguro sobre dicha propiedad. Como vimos, el derecho a hogar seguro es de carácter sustantivo, por lo que su efectividad no está atada al aspecto procesal de su inscripción en el Registro de la Propiedad.

Por otro lado, a diferencia del criterio mayoritario en *Rivera García v. Registradora,* supra, la inscripción del derecho a hogar seguro por parte de un comunero constituye un acto de conservación y no un acto de dominio o alteración a la cosa.[8] Los actos de conservación son aquellos necesarios para que la cosa no se deteriore ni perezca, y aquellos dirigidos a mantener la utilidad y productividad de la cosa común, procurando que ésta permanezca al ser-

---

[8] En *Rivera García v. Registradora,* 189 DPR 628 (2013), existía una comunidad hereditaria a la cual por sus características *sui generis* no se le podían aplicar las normas existentes para una comunidad de bienes, tal y como hizo la Mayoría en dicho caso.

vicio del destino que se le asignó. Véanse: *Residentes Sagrado Corazón v. Arsuaga*, 160 DPR 289, 309 (2003), citando a M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1985, T. V, Vol. 2, pág. 106.[9]

Asimismo, hemos establecido que para realizar actos de conservación sobre la cosa común un comunero no necesita el consentimiento de los demás copartícipes, pero puede requerirles que contribuyan con los gastos. Véanse: *Cabera v. Morales*, 57 DPR 457, 463 (1940); Art. 329 del Código Civil, 31 LPRA sec. 1274; J.R. Vélez Torres, *Curso de derecho civil*, Madrid, [s. Ed.], 1983, T. II, pág. 148. No hay duda de que al inscribir el derecho a hogar seguro sobre una copropiedad, un comunero la protege de su posible embargo y ejecución en venta judicial, lo que implicaría la pérdida del inmueble. Al así hacerlo, la propiedad sujeta al derecho a hogar seguro seguirá destinada a su uso residencial —tal y como exige la Ley de Protección del Hogar—, por lo que no se altera su naturaleza ni su destino. Además, cuando el comunero inscribe su derecho a hogar seguro sobre la propiedad en que reside, no está perjudicando el interés de la comunidad ni les impide a los demás copartícipes utilizarla según su derecho, tal y como exige el Art. 328 del Código Civil, 31 LPRA sec. 1273.

Como hemos visto, no existe justificación para requerir que todos los cotitulares comparezcan al otorgamiento del acta para que uno de ellos pueda inscribir su derecho a hogar seguro.[10] Esto es contrario a la intención legislativa

---

[9] El profesor Godreau Robles llega a la misma conclusión al afirmar que "[n]o es un acto de alteración porque lo que se logra es la protección de la cosa en contra de los terceros que querían ejecutarla". Y más adelante añade: "[...] la inscripción del derecho de hogar seguro representa un acto de conservación, porque saca la finca de la posible pérdida que representaría la ejecución de la misma en cobro de deudas". (Énfasis suprimido). Ver M.J. Godreau Robles, *Derechos reales[: análisis del término 2013-2014]*, 84 Rev. Jur. UPR 709, 719 (2015).

[10] Valga señalar que el comunero que no comparezca al otorgamiento del acta de hogar seguro sobre la propiedad de la cual es codueño no solamente no se ve

de la Ley Núm. 195-2011, *supra*, y niega, so pretexto de un rigorismo procesal innecesario, un derecho sustantivo y de transcendencia real que fue concedido expresamente por legislación a todo individuo, jefe o jefa de familia. Lo único que requiere la Ley de Protección del Hogar es que la propiedad a ser afectada por el derecho a hogar seguro conste inscrita a nombre de la persona que desea inscribir sobre ella su derecho, que ésta sea la residencia principal del solicitante, y que no tenga inscrito su derecho a hogar seguro sobre otra propiedad. 31 LPRA sec. 1858f.([11]) Por tanto, basta con que uno solo de ellos comparezca y solicite la inscripción de su derecho a hogar seguro sobre esa propiedad, siempre que cumpla con los demás requisitos señalados por la ley.

## III

En el caso ante nuestra consideración, el señor Bones Cruz compareció ante notario público para otorgar un acta de hogar seguro sobre su residencia principal, la cual constaba inscrita a su nombre y a nombre de la su excompañera, quien no compareció. El Registrador de la Propiedad, aplicando la norma establecida en *Rivera García v. Registradora*, supra, denegó la inscripción. La Mayoría concluye que dicha decisión fue correcta ya que "[t]al y como resolvimos en *Rivera García v. Registradora*, supra, págs. 642–643, cuando una propiedad pertenece a más de un titular registral, es necesario que todos los cotitulares comparezcan a la autorización del Acta Notarial en la que se re-

---

afectado, sino que de todos modos no podría solicitar para sí el derecho a hogar seguro sobre la propiedad, a menos que ésta sea su residencia principal.

([11]) Como indicó la Juez Asociada Señora Rodríguez Rodríguez en sus expresiones en *Rivera García v. Registradora*, supra, págs. 643–644, aún permanecen las interrogantes en torno a cómo se extenderá el derecho a hogar seguro ante una situación en que la propiedad esté inscrita a favor de más de un titular y sólo uno de ellos la haya reclamado como hogar seguro. Sin embargo, los hechos de este caso no son los apropiados para profundizar en cuanto a ello, toda vez que estamos ante una controversia relacionada a la inscripción del derecho y no con la ejecución de la propiedad.

clama el derecho a hogar seguro". (Cita omitida). Sentencia, pág. 858. Difiero.

El recurrente cumple con todos los requisitos para establecer su derecho a hogar seguro. Primero, la propiedad está inscrita a su nombre en el Registro de la Propiedad. Segundo, la propiedad es su residencia principal. Por último, el señor Bones Cruz no tiene inscrito su derecho a hogar seguro sobre ninguna otra propiedad. El citado Art. 9 de la Ley de Protección del Hogar permite la inscripción del derecho del señor Bones Cruz sin necesidad de que comparezca la cotitular. Concluir lo opuesto es ponerle trabas al reconocimiento del derecho sustantivo y de transcendencia real establecido en la Ley de Protección del Hogar, lo cual es contrario a nuestros principios registrales. En ninguna parte de la ley se requiere la comparecencia de todos los cotitulares para inscribir el derecho a hogar seguro sobre la propiedad. Por el contrario, las normas de la comunidad de bienes establecen que, al tratarse de un acto de conservación de la propiedad, el señor Bones Cruz está facultado para realizarlo sin tener que procurar la intervención de la otra cotitular. De esta manera, se reconoce y adelanta la intención legislativa de proteger el derecho a la vivienda y hogar seguro del recurrente. Este derecho, valga recordar, existe en este momento a pesar de la denegación del Registrador de la Propiedad y de este Tribunal para permitir su inscripción. No es correcto, por lo tanto, insistir en la solución errada a la que llegamos en *Rivera García v. Registradora*, supra. Por el contrario, debemos corregir el curso y ajustar la balanza para favorecer el interés legítimo de un copropietario de proteger su propiedad, en la cual tiene su hogar y residencia principal y la de su familia. Esto, a pesar de que, por distintas razones, no pueda contar en ese momento con el consentimiento de los demás copropietarios. Como la Mayoría de este Tribunal insiste en aplicar una norma equivocada, disiento.

## IV

Por todo lo anterior, revocaría la determinación del Hon. Ismael L. Purcell Soler, Registrador de la Propiedad de la Sección de Guayama, y ordenaría la inscripción del derecho a hogar seguro sobre la finca del señor Jesús Bones Cruz. Esto por entender que no es necesaria la comparecencia de la cotitular al otorgamiento del acta de hogar seguro.