EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Money´s People Inc.<br><br>Peticionario<br><br>v.<br><br>Pedro López Julia<br><br>Recurrido | Certiorari<br><br>2019 TSPR 120<br><br>202 DPR ____ |

Número del Caso:  CC-2017-0259

Fecha: 28 de junio de 2019

Tribunal de Apelaciones:

   Región Judicial de San Juan-Fajardo Panel II

Abogado de la parte peticionaria:

   Lcdo. Gaspar A. Martínez Mangual

Abogado de la parte recurrida:

   Lcdo. Carlos A. Piovanetti Dohnert

Materia: Ley núm. 195-2011 Ley de Hogar Seguro-Interpretación de la cláusula de vigencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Money's People Inc.<br><br>Peticionario<br><br>v.<br><br>Pedro López Julia<br><br>Recurrido | CC-2017-0259 | *Certiorari* |

**El Juez Asociado señor RIVERA GARCÍA emitió la opinión del Tribunal.**

En San Juan, Puerto Rico, a 28 de junio de 2019.

Nos corresponde aclarar la aplicación de la *Ley del derecho a la protección del hogar principal y el hogar familiar*, Ley Núm. 195-2011, al interpretar su cláusula de vigencia. Debemos determinar si en una demanda presentada antes de la entrada en vigor de la ley, pero cuya sentencia se ejecuta sobre un inmueble con posterioridad, el demandado tiene derecho a la protección amplia de la Ley Núm. 195-2011; o si, por el contrario, le ampara la ley que estaba vigente al momento de incoarse la demanda y dictarse la sentencia. Resolvemos que, como la ejecución de la sentencia es la continuación del proceso judicial que comenzó antes de promulgarse el estatuto, en este caso no aplica la Ley Núm. 195-2011. Por lo tanto, revocamos el dictamen recurrido, emitido por el Tribunal de Apelaciones.

A continuación esbozamos los antecedentes fácticos que dieron lugar a esta controversia.

I

El **11 octubre de 1996** Money's People, Inc. (Money's o peticionaria) entabló una demanda en cobro de dinero contra el Sr. Pedro López Llanos (señor López Llanos o recurrido), su esposa Eduviges Julia Miranda y la Sociedad Legal de Gananciales compuesta por ambos, el Sr. Pedro López Juliá (señor López Juliá), FOMAR, Inc. (FOMAR), y otros.[1] En esencia, la reclamación surgió pues, luego de una auditoría en 1994, Money's descubrió que fue víctima de las acciones fraudulentas de un ex empleado.[2] Este último había desembolsado $102,162.09 del dinero de la peticionaria, sin su autorización, entregándolo al señor López Llanos, quien utilizó el dinero para financiar la compañía FOMAR.[3] En ese mismo año, el señor López Juliá ——presidente de FOMAR—— y el señor López Llanos suscribieron un contrato de prenda para garantizar el préstamo a FOMAR.[4] Para ello, se entregó un pagaré en prenda por $120,000.00 más intereses al ocho porciento anual.[5] El pagaré fue garantizado, a su vez, con una hipoteca sobre un inmueble del señor López Llanos y su

---

[1] *Sentencia KLAN0700765,* Apéndice de la Petición de *certiorari*, pág. 169.

[2] *Sentencia KCD96-0508*, Apéndice de la Petición de *certiorari*, pág. 162.

[3] Íd., págs. 161-162.

[4] Íd., pág. 162.

[5] Íd.

esposa.[6] Asimismo, para mayo de 1996 el señor López Llanos garantizó personalmente la obligación de FOMAR.[7]

Celebrado el juicio, el **2 de mayo de 2007** el Tribunal de Primera Instancia dictó una *Sentencia* mediante la cual condenó a los demandados a pagar $121,249.74, más los intereses del tipo pactado.[8] Luego de varios incidentes procesales ante el Tribunal de Apelaciones, que culminaron con la confirmación de los pronunciamientos del foro primario en el 2008, el dictamen advino final y firme.[9]

---

[6] Íd., pág. 163. En particular, la demanda señaló que

"[e]l pagaré entregado en prenda está garantizado por [una] hipoteca sobre [un] inmueble propiedad de LOPEZ LLANOS y JULIA MIRANDA, inscrita al folio 56 del tomo 290, finca 12,372 constituída [sic] mediante Escritura de Hipoteca número ocho otorgada en el 27 de mayo de 1996 ante Notario, véase Anejo #2 y descrita como sigue:

URBANA: Solar situado en el barrio Martín González de Carolina, Puerto Rico, que lleva el número ciento cuarenta y siete de la Urbanización José Severo Quiñones con cabida de trescientos noventa metros cuadrados con sesenta y centésimas de otro metro cuadrado en lindes, por el Norte con solar número ciento cuarenta y ocho, por el Sur con solar número ciento cuarenta y seis y Carretera número tres, por el Este con Carretera número tres, por el Oeste con Calle número cuatro.

[…] Dicha hipoteca se encuentra inscrita al folio cincuenta del tomo ciento sesenta de Carolina, finca número [s]eis mil seiscientos sesenta y uno, inscripción primera". *Demanda,* Apéndice de la Petición de *certiorari*, págs. 150-151.

[7] *Sentencia KCD96-0508*, Apéndice de la Petición de *certiorari*, pág. 165.

[8] *Sentencia KLAN0700765*, Apéndice de la Petición de *certiorari*, pág. 172. Entre los hechos probados, el foro primario indicó que "[l]a prueba documental demostró que el pagaré fue garantizado por una hipoteca constituida sobre un inmueble perteneciente a Pedro López Llanos, Eduviges Juliá Miranda y la Sociedad Legal de Gananciales compuesta por ambos, que se encuentra inscrita al folio 56, del tomo 290, finca 12,372. La hipoteca fue constituida mediante escritura de hipoteca número ocho, otorgada el 27 de mayo de 19[94], sobre un solar en el Barrio Martín González de Carolina, Puerto Rico". *Sentencia KCD96-0508*, Apéndice de la Petición de *certiorari*, pág. 163.

[9] *Sentencia KLCE201501873*, Apéndice de la Petición de *certiorari*, pág. 189.

Varios años más tarde ——en febrero de 2014—— el recurrido presentó una petición de quiebra.[10] Sin embargo, la peticionaria no fue incluida como acreedora en este proceso.

Así las cosas, el **5 de mayo de 2014** Money's pidió la ejecución de la sentencia dictada a su favor.[11] El 16 de mayo de ese año el Tribunal de Primera Instancia dictó una *Orden de Ejecución*. Varios días después se emitió un mandamiento mediante el cual se ordenó al Alguacil a vender en subasta pública el inmueble descrito por la peticionaria en su solicitud de ejecución de sentencia.

Ante este escenario, el recurrido acudió al proceso de quiebra y enmendó su petición a los efectos de incluir a

---

[10] Sentencia *KLCE201501873,* Apéndice de la Petición de *certiorari*, pág. 185.

[11] *Moción solicitando autorización para la ejecución de sentencia en virtud con la Regla 51.1,* Apéndice de la Petición de *certiorari*, págs. 183-185. Se refirió a un pagaré a favor del portador, que garantizaba la deuda objeto del presente caso, por la cantidad de $120,000.00, de principal, intereses al 8%, mediante Escritura número diez (10) de 27 de mayo de 1994, otorgada ante el notario José Nicolás Medina Fuentes, inscrita al folio 231, del tomo 577, de Sabana Llana, sección 5 de San Juan, finca número 12,840, inscripción 12ª. […]". Íd., págs. 183-184. Sostuvo que se vendería en subasta pública el bien inmueble que describió de la manera siguiente:

> "'URBAN: Lot located at Sabana Llana Ward of Rio Piedras, municipality of San Juan, Puerto Rico, marked number twelve (12), of block 'Q' of Montecarlo Development, with an area of THREE HUNDRED FIFTY SQUARE METERS (350.00 sq. mts.) bounded by the NORTH with lot number eleven (11) in twenty five meters (25.00) by the SOUTH, with lot number thirteen (13) in twenty five meters (25.00), by the EAST, with Street number eight (8) in fourteen meter [sic] (14.00); and by the WEST, with driveway, in fourteen meters (14.00)[.]'
>
> The above described lot contains a concrete house for living purposes.
>
> Inscrita en el folio doscientos cuarenta y ocho (248) del tomo trescientos cuatro (304) de Sabana Llana, finca número doce mil ochocientos cuarenta (12,840) en el Registro de la Propiedad de San Juan, Sección Quinta".

Íd., pág. 184. Un extracto de la sentencia se presentó en el Registro de la Propiedad. *Extracto de sentencia,* Apéndice de la Petición de *certiorari,* pág. 216.

Money's como acreedora. Una vez enterada, la peticionaria notificó de ello al Tribunal de Primera Instancia. En consecuencia, el foro primario paralizó el caso.

Luego de otros pormenores procesales en la esfera federal, las partes llegaron a un acuerdo en la Corte de Quiebras.[12] Ahora bien, ante el incumplimiento del recurrido con lo pactado, Money's solicitó a la Corte Federal que levantara la paralización; petición que fue concedida.[13] El Tribunal de Quiebras concluyó que, efectivamente, el recurrido había incumplido el acuerdo. Por consiguiente, el Tribunal de Primera Instancia continuó con los procedimientos.

Inconforme con la orden de ejecución de sentencia de mayo de 2014, el señor López Llanos recurrió al tribunal intermedio apelativo. En síntesis, alegó que el Tribunal de Primera Instancia carecía de jurisdicción para ordenar la ejecución de una sentencia que se encontraba paralizada en virtud del proceso de quiebra.[14] Coetáneamente, el 23 de noviembre de 2015 el señor López Llanos presentó en el foro de instancia una *Moción solicitando beneficio de hogar*

---

[12] En lo pertinente, el acuerdo establecía lo siguiente: "[D]ebtors shall pay directly to said creditor the proceeds of the refinancing of their residential property (excluding reverse mortgage) within six (6) months of the agreement (due 01/29/2015). Upon failure to comply, the stay will be deemed lifted 'in rem' in favor of Money's People, Inc." (Énfasis suprimido). Apéndice de la Petición de *certiorari*, pág. 219.

[13] *Docket*, Apéndice de la Petición *de certiorari,* págs. 105-106. Cabe mencionar que mientras se atendía esta solicitud, el señor López Llanos presentó una instancia en el Registro de la Propiedad con el propósito de cancelar la hipoteca constituida sobre el inmueble objeto de esta controversia. Véase*,* además, *Certificado de estudio de título,* Apéndice de la *Petición de certiorari,* págs. 212-214.

[14] *Sentencia KLCE201501873*, Apéndice de la *Petición de certiorari,* págs. 186-198.

*seguro*.[15] En esta sostuvo que el **19 de marzo de 2013** otorgó una *Escritura de Hogar Seguro* sobre la propiedad que Money's se proponía subastar y la presentó en el Registro de la Propiedad.[16]

Money's se opuso al petitorio de hogar seguro que hizo el recurrido. Arguyó que la Ley Núm. 195-2011 no aplicaba en el caso porque el estatuto era de aplicación prospectiva.[17]

El 14 de enero de 2016 el Tribunal de Apelaciones notificó una sentencia mediante la cual expidió el recurso de *certiorari* y dejó sin efecto la orden de ejecución de sentencia.[18] Entonces, ante el dictamen del foro apelativo intermedio, el 9 de marzo de 2016 la peticionaria solicitó nuevamente la ejecución de la sentencia.[19]

Cabe mencionar que el señor López Llanos se opuso reiteradamente ante el tribunal y peticionó que se paralizara el proceso.[20] No obstante, sus reclamos fueron declarados no

---

[15] *Moción solicitando beneficio de hogar seguro*, Apéndice de la *Petición de certiorari*, págs. 199-200.

[16] Íd., pág. 199.

[17] *Moción urgente sobre solicitud de hogar seguro,* Apéndice de la Petición de *certiorari*, pág. 202.

[18] Véase *Sentencia KLCE201501873*, Apéndice de la *Petición de certiorari*, págs. 186-198. Concluyó que el señor López Llanos había sometido la petición de quiebras desde febrero de 2014, por lo que cualquier proceso de cobro contra este estaba paralizado y la actuación del foro primario ordenando la ejecución de la sentencia y emitiendo el mandamiento era nula. Íd., págs. 197-198.

[19] *Moción solicitando autorización para ejecución de sentencia en virtud de la Regla 51.1,* Apéndice de la Petición de *certiorari*, págs. 204-206.

[20] Los planteamientos de las partes, ajenos a la controversia que tenemos ante nuestra consideración, fueron replicados en una serie de mociones que presentaron con posterioridad en el foro primario. Véanse: *Oposición a moción solicitando autorización de ejecución de sentencia; Réplica a oposición solicitando autorización de ejecución de sentencia; Dúplica a réplica a oposición solicitando autorización de ejecución de sentencia; Réplica a dúplica en oposición solicitando autorización de ejecución de sentencia; Moción solicitando paralización de ejecución de*

ha lugar por el foro primario.[21] Como consecuencia, este prosiguió con el proceso de ejecución de la sentencia y ordenó la expedición del mandamiento para que el inmueble del señor López Llanos se vendiera en subasta pública.[22]

Posteriormente, el recurrido sometió ante la consideración del tribunal una *Moción enmendada solicitando beneficio de hogar seguro.* Allí alegó que de acuerdo con la Ley Núm. 195-2011, la cantidad que debía consignarse por concepto de hogar seguro era de $25,000, y no los $15,000 que proveía la *Ley para establecer el derecho a hogar seguro* (Ley Núm. 87-1936), Ley Núm. 87 del 13 de mayo de 1936, según enmendada.[23]

---

*sentencia*, Apéndice de la Petición de *certiorari*, págs. 207-243. Véanse, además: *Moción solicitando orden y mandamiento para ejecución de sentencia; Moción de reconsideración; Moción reiterando oposición a expedir mandamiento de ejecución de sentencia y solicitando paralización del procedimiento; Oposición a la paralización de los procedimientos,* Apéndice de la Petición de *certiorari*, págs. 245-250.

[21] E.g., *Notificación* de 14 de junio de 2016, Apéndice de la Petición de *certiorari*, pág. 244 ("Por segunda vez, no ha lugar[.] [U]na cosa es 'in rem' y otra 'in personam'[.] El 'lift of stay' fue 'in rem'"); *Notificación* de 8 de junio de 2016, Apéndice de la Petición de *certiorari*, pág. 252 ("No ha lugar. Bajo el Código de Quiebras federal la deuda es asegurada y el tribunal de quiebras autorizó la ejecución").

[22] *Orden* y *Edicto de Subasta,* Apéndice de la Petición de *certiorari*, págs. 257-260.

[23] *Moción enmendada solicitando beneficio de hogar seguro*, Apéndice de la *Petición de certiorari*, págs. 261-262. El recurrido enmendó la solicitud que había realizado a los efectos de añadir:

"6. Que a tenor que la Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, Ley Núm. 195 del 13 de septiembre de 2011, en los casos donde aplique el Código de Quiebras Federal, aplicarán las disposiciones de dicho código.

7. Que en este caso el demandado está acogido al Código de Quiebras Federal, caso núm. 14-01100(ESL), US Bankruptcy Court for the District of Puerto Rico. (V[é]ase anejo B).

8. Que en dicho procedimiento federal, al demandado le fue conferid[a] la cantidad de $25,000.00 como exención por concepto de hogar seguro. (se incluye anejo C)".

La peticionaria replicó esta moción. En esencia, expuso que la Ley Núm. 195-2011 no regía en el caso porque era de aplicación prospectiva y la demanda se había instado antes de su aprobación.[24]

Ante ello, el señor López Llanos compareció nuevamente ante el tribunal. En lo pertinente, arguyó

> […] que disponiendo el Artículo 4 de la propia ley 195 que "en los casos donde aplique el Código de Quiebras Federal, en cuyo caso aplicarán las disposiciones de dicho Código" y siendo ese [el] texto de la ley, la ley anterior se aplicará (Art. 17), a los casos anteriormente presentados que no han sido exclu[i]dos por la Ley 195. Nótese que el mismo Art. 15 de la Ley 195 dispone […] que las disposiciones de esta ley son independientes y separables, ello es, cada disposición tiene su propia fuerza y vigor, a[u]n si una disposición en particular es declarada inconstitucional.
>
> […] Esta parte sostiene que de la exposición de motivos de la Ley 195 no surge información que nos permita saber a qu[é] el legislador se refiere al expresar "cuando les sea aplicable", por lo que es plausible la interpretación que le ha dado la parte demandante.[25]

El 11 de agosto de 2016 se celebró la subasta y la peticionaria obtuvo la buena pro. Consiguientemente, al día siguiente esta solicitó la entrega del inmueble.[26]

---

[24] *Réplica urgente a moción sobre solicitud de hogar seguro y solicitud de sanciones por temeridad,* Apéndice de la Petición de *certiorari*, pág. 263.

[25] *Dúplica a réplica urgente a moción sobre solicitud de hogar seguro y solicitando vista y resolución expedita,* Apéndice de la Petición de *certiorari*, pág. 273. Por otro lado, el señor López Llanos solicitó a la Corte de Quiebra que emitiera una orden de paralización. No obstante, el Tribunal de Quiebra declaró no ha lugar esta solicitud, por lo que la subasta se celebró según pautada. *Acta de subasta*, Apéndice de la Petición de *certiorari,* págs. 290-291.

[26] Véase *Moción solicitando orden de confirmación y orden de entrega material de inmueble* y *Acta de subasta*, Apéndice de la Petición de *certiorari*, págs. 289-291.

No obstante, el recurrido compareció al tribunal para expresar su inconformidad con la subasta, pues consideró que este no había resuelto sus peticiones para paralizarla.[27] Posteriormente, este presentó una *Moción de reconsideración.* Arguyó, nuevamente, que la Ley Núm. 87-1936 no aplicaba, toda vez que el texto de la Ley Núm. 195-2011 excluía ese caso. A saber, cuestionó al foro judicial lo siguiente:

> […] [E]n el presente caso, cuál es el propósito de legislar que "los casos que estén presentados en el Tribunal, antes de la vigencia de esta Ley, cuando les sea aplicable." La explicación más lógica es que se refiere a lo que le es aplicable según la propia ley. Por el texto del Art. 4 de dicha Ley, no le es aplicable a los casos que están excluidos bajo el Art. 4 de la Ley. Bajo el Art. 4 de la Ley 195, están excluidos, entre otros, las personas que están [b]ajo la Ley de Quiebras Federal. Ciertamente, el interpretar que la frase "que los casos que están presentados antes de la vigencia de esta ley" les aplica la ley anterior sin darle valor a la frase "cuando les sea aplicable," tiene el efecto de eliminar dicho requisito de la ley, lo cual constituye un acto de legislación por este Tribunal, cosa que está vedada por la doctrina de separación de poderes dispuest[a] en nuestra [C]onstitución. […]. (Citas omitidas).[28]

En la alternativa, adujo que procedía concederle la vista que establecía la Ley Núm. 87-1936, según enmendada.[29]

La peticionaria replicó estos argumentos. Expuso que la vista no procedía porque **ella misma aceptó el derecho máximo que concedía la Ley Núm. 87-1936 al señor López Llanos.** Así

---

[27] *Moción solicitando reconocimiento de beneficio de hogar Seguro,* Apéndice de la Petición de *certiorari*, págs. 292-293; *Moción objetando confirmación de venta,* Apéndice de la Petición de *certiorari*, págs. 294-295.

[28] *Moción de reconsideración,* Apéndice de la Petición de *certiorari*, pág. 299.

[29] Íd., pág. 301. Véase Sec. 5 de la Ley Núm. 116-2003.

pues, arguyó que no era necesaria una audiencia para dilucidar un derecho que no se había puesto en controversia y cuando se cumplió como disponía el estatuto.[30]

El 6 de septiembre de 2016 los petitorios del recurrido fueron denegados por el Tribunal de Primera Instancia.[31] A su vez, este último notificó que había confirmado la adjudicación y la venta del bien inmueble en cuestión.[32]

Luego de varios intentos infructuosos del señor López Llanos para no entregar ni desalojar la propiedad, este presentó un recurso de *certiorari* y una moción de auxilio de jurisdicción en el Tribunal de Apelaciones.[33] En resumen, sostuvo que el tribunal de instancia erró al no reconocer el inmueble como hogar seguro al amparo de la Ley Núm. 195-2011; no celebrar la vista compulsoria de hogar seguro que disponía la Ley Núm. 87-1936; confirmar la subasta, a pesar de que estaba en controversia lo referente al hogar seguro, y al avalar que se consignaran solo $15,000 por concepto de hogar seguro.[34]

---

[30] *Réplica a moción de reconsideración,* Apéndice de la Petición de *certiorari*, pág. 308.

[31] *Notificación de archive en autos de la resolución de moción de reconsideración* de 6 de septiembre de 2016, Apéndice de la Petición de *certiorari,* págs. 309-310.

[32] *Orden de confirmación de adjudicación o venta judicial*, Apéndice de la Petición de *certiorari*, págs. 312-313.

[33] Véase *Moción solicitando orden de entrega material de inmueble; Moción en oposición a solicitud de entrega material del inmueble; Notificación* de 21 de septiembre de 2016; *Orden* de 14 de septiembre de 2016*; Moción urgente solicitando nulidad de subasta y paralización de orden de desalojo; Notificación* de 29 de septiembre de 2016; *Orden* de 26 de septiembre de 2016, Apéndice de la Petición de *certiorari*, págs. 315-327.

[34] *Resolución KLCE201601847*, Apéndice de la *Petición de certiorari*, pág. 55.

El foro apelativo intermedio confirmó los dictámenes del Tribunal de Primera Instancia. Primero, coligió que la Ley Núm. 195-2011 no aplicaba a un caso que data del 1996. Segundo, que la Ley Núm. 87-1936 establecía que la cuantía exenta y protegida de embargos era de $15,000, por lo que, habiéndose consignado esta cantidad en el foro primario, la vista erigida en el estatuto era innecesaria.[35]

Inconforme, el señor López Llanos solicitó que el Tribunal de Apelaciones reconsiderara.[36] Así lo hizo este y revocó al tribunal de instancia.[37] Entre otras cosas, resolvió que la Ley Núm. 195-2011 aplicaba al caso porque la escritura de hogar seguro y la orden de ejecución de sentencia tenían fecha posterior a la vigencia de esa ley.[38] Además, señaló que estaba pendiente de calificación una instancia que el señor López Llanos presentó ante el Registro de la Propiedad para que se cancelara, por prescripción, la hipoteca sobre el inmueble en cuestión. Concluyó que, por este hecho, el foro primario debió aguardar el trámite registral como condición previa al trámite post-sentencia.[39]

Oportunamente, Money's presentó una petición de *certiorari* ante este Tribunal, en la cual imputó los errores siguientes:

---

[35] Íd., págs. 61-62.

[36] Véase *Moción de reconsideración*, Apéndice de la Petición de *certiorari*, págs. 44-47.

[37] *Sentencia en reconsideración KLCE201601847*, Apéndice de la *Petición de certiorari*, págs. 1-16. Véase, íd., pág. 3 n. 1, para un listado de las órdenes revocadas por el Tribunal de Apelaciones.

[38] Íd., pág. 15.

[39] Íd.

**Primer error**: Erró el Tribunal de Apelaciones al dictar sentencia en reconsideración y resolver que la Ley de Hogar Seguro, Ley Núm. 195 de 13 de septiembre de 2011, le es aplicable al presente caso, que fue comenzado en 1996, sin explicar la razón en derecho y hacer caso omiso al claro y talante lenguaje de la propia ley, que establece que su aplicación ser[á] prospectiva y los casos presentados antes de la aprobación aplicar[á] la Ley Núm. 87 de 13 de mayo de 1936, según enmendada[,] y cancelar la subasta y ordenar la celebración de una vista cuando ya el monto máximo por hogar seguro est[á] consignado.

**Segundo error**: Err[ó] […] al concluir que la parte peticionaria no tiene derecho a cobrar su acreencia en contra de la propiedad de la parte recurrida, aun cuando existía una estipulación por acuerdo entre las partes en el Foro Federal.

**Tercer error[:]** Erró […] al no concluir que la parte recurrida actuó fraudulentamente ante el Registro de la Propiedad al presentar una instancia al Registrado de la Propiedad solicitando la cancelación del gravamen hipotecario por lo resuelto por este Honorable Tribunal Supremo en *Distribuidores Unidos de Gas de P.R. v. Sucn. Declet,* 2016 TSPR 171[,] y un extracto de [la] sentencia presentado desde el 9 de mayo de 2014 que constituye un gravamen real.

El 26 de mayo de 2017 expedimos el recurso. Con la comparecencia de las partes,[40] procedemos a resolver.

## II

La Sec. 7 de la Carta de Derechos de la Constitución de Puerto Rico recoge entre sus disposiciones el derecho fundamental al disfrute de la propiedad, e incluso exige que el Estado a través de las leyes garantice a todo ciudadano un "mínimo de propiedad y pertenencias no sujetas a

---

[40] El 15 de septiembre de 2017 emitimos una resolución en la cual, según solicitado por Money's, acogimos la Petición de *certiorari* como su alegato. El 18 de septiembre de 2017 el señor López Llanos presentó su alegato.

embargos".[41] Así pues, en Puerto Rico el derecho a poseer un mínimo de propiedad protegido contra embargos es de rango constitucional, aunque se manifiesta en el derecho estatutario denominado como *hogar seguro*.

El derecho a hogar seguro pretende que todo ciudadano pueda contar con una "protección básica ante el riesgo de ejecución de una sentencia en contra de su residencia".[42] Este constituye una limitación a la responsabilidad universal del deudor.[43] Entiéndase que, a pesar de que un deudor responde con todos sus bienes presentes y futuros en el cumplimiento de sus obligaciones,[44] en cierto sentido este derecho tiene el efecto de insular parte de su patrimonio y removerlo del tráfico comercial en el cobro de ciertas obligaciones.[45]

El derecho a hogar seguro se incorporó por primera vez a nuestro ordenamiento jurídico por vía estatutaria en 1903 con la promulgación de la *Ley para definir el "homestead" y para exentarlo de una venta forzosa* de 12 de marzo de 1903.[46]

---

[41] Art. II, Sec. 7, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 301 ("Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales. **Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo**"). (Énfasis suplido).

[42] Exposición de Motivos de la Ley Núm. 195-2011 (2011 Leyes de Puerto Rico 2230).

[43] *Bones Cruz v. Registrador*, 194 DPR 852, 856 (2016), sentencia, al citar a *Rivera García v. Registradora*, 189 DPR 628, 639 (2013).

[44] Art. 1811 del Código Civil de Puerto Rico, 31 LPRA 5171.

[45] *Rivera García v. Registradora*, supra, pág. 639.

[46] Véase *Ley para definir el "homestead" y para exentarlo de una venta forzosa* de 12 de marzo de 1903 (1903 Leyes de Puerto Rico 107).

La ley en cuestión fue derogada por la Ley Núm. 87-1936, *supra*, que, luego de una enmienda en 1955, aumentó la protección por concepto de hogar seguro de $500 a $1,500.[47] Según dispuso la Ley Núm. 87-1936, *supra,* el "hogar seguro y todo derecho o título sobre el mismo estaba exento de embargo, sentencia, exacción o ejecución", con excepción de aquello que se adeudara por la adquisición o compra, o por realizar mejoras en la misma.[48]

Posteriormente, este estatuto se enmendó para aumentar la protección a $15,000.[49] Ello se hizo según señaló la exposición de motivos de la ley, con el objetivo de armonizar la cuantía monetaria con la Constitución, varias leyes que se habían promulgado a través de los años y nuestra realidad económica. Así pues, instituyó que cuando la propiedad se ocupara como hogar seguro ⸺inscrita o no en el Registro de la Propiedad⸺ no podría venderse en virtud de sentencia o ejecución, salvo que se obtuviera una suma mayor a $15,000.[50] En ese caso, el funcionario que llevó a cabo la venta debía depositar en la secretaría del tribunal la referida suma para

---

[47] Véase *Ley para Establecer el Derecho a Hogar Seguro* (Ley Núm. 87-1936)*,* Ley Núm. 87 de 13 de mayo de 1936 (1936 Leyes de Puerto Rico 461). La ley de 1903 disponía que el acreedor solo tendría derecho al excedente de $500 que produjera la venta de la propiedad. *Ley para definir el "homestead" y para exentarlo de una venta forzosa* de 12 de marzo de 1903 (1903 Leyes de Puerto Rico 108). La Ley Núm. 87-1936, *supra,* establecía la misma cuantía originalmente, pero fue enmendada por la Ley Núm. 1 de 11 de febrero de 1955 (1955 Leyes de Puerto Rico 3) para aumentar la cuantía mínima protegida.

[48] Ley Núm. 87-1936 (31 LPRA ant. sec. 1852).

[49] *Ley del derecho a la protección del hogar principal y el hogar familiar*, Ley Núm. 116-2003, 31 LPRA sec. 1858 *et seq.*

[50] Sec. 5 de la Ley Núm. 87-1936, *supra,* según enmendada por la Ley Núm. 116-2003 (2003 Leyes de Puerto Rico 495).

la correspondiente determinación sobre la legitimidad del reclamo de hogar seguro.[51] A esos efectos, la ley estableció que cuando el demandado reclamara el derecho a hogar seguro, tendría que celebrarse una vista en la cual las partes presentaran toda la prueba **para dilucidar la procedencia de la reclamación sobre el referido derecho.**[52]

Ahora bien, la cúspide de la protección sobre la residencia principal de un deudor vino con la aprobación de la Ley Núm. 195-2011, *supra*, que tuvo el fin expreso de ampliar la protección reconocida hasta ese momento.[53] En particular, la ley estableció que

> [t]odo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la estructura enclavada en el mismo, o una residencia bajo el régimen de la Ley de Condominios que le pertenezca o posea legalmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal.[54]

La aprobación de esta ley marcó un cambio radical en el enfoque de la protección de hogar seguro.[55] Contrario a las legislaciones anteriores, la Ley Núm. 195-2011 no protegió una cantidad fija de dinero, sino el disfrute del inmueble que sirve de hogar o residencia principal.[56] En ese sentido, este estatuto estampó que la propiedad que se utilizara como

---

[51] Íd., págs. 495-496.

[52] Íd., pág. 496.

[53] Exposición de Motivos de la Ley Núm. 195-2011 (2011 Leyes de Puerto Rico 2230-2231).

[54] Art. 3 de la Ley Núm. 195-2011 (31 LPRA sec. 1858).

[55] *Rivera García v. Registradora*, supra, pág. 636.

[56] Íd.

residencia principal estaría protegida contra embargos, sentencias o ejecuciones ejercitadas para el pago de algunas deudas y eliminó que la protección se limitara a una cuantía particular del valor de la residencia principal.[57]

No obstante, cabe notar que la Asamblea Legislativa erigió que la Ley Núm. 195-2011, *supra*, aplicaría prospectivamente. Sobre ese particular, el Art. 17 del estatuto dispuso lo siguiente:

> Esta Ley comenzará a regir inmediatamente después de su aprobación y **la protección aquí dispuesta <u>será de aplicación prospectiva</u>. Los <u>casos que estén presentados en el Tribunal</u> antes de la vigencia de esta Ley, <u>cuando les sea aplicable</u>, le aplicará la protección de hogar seguro, según lo dispuesto en la Ley Número 87 de 13 de mayo de 1936,** según enmendada. (Énfasis y subrayado suplido).[58]

---

[57] Art. 5 de la Ley Núm. 195-2011 (31 LPRA sec. 1858b). La Ley Núm. 195-2011 exceptuó de esta protección aquellas circunstancias descritas en el Art. 4. Allí enumeró varias instancias en las cuales este derecho no podrá invocarse ya que se entiende renunciado, a saber:

   a) en todos los casos que se obtenga una hipoteca que grave la propiedad protegida
   b) en los casos de cobro de contribuciones estatales o federales
   c) en los casos donde se […] deban pagos a contratistas para reparaciones de la propiedad protegida
   d) en los casos donde aplique el Código de Quiebras Federal, en cuyo caso aplicarán las disposiciones de dicho Código
   e) en todos los casos de préstamos, hipotecas, contratos refaccionarios y pagarés constituidos a favor de o asegurados u otorgados por la Puerto Rico Production Credit Association, Small Business Administration, la Autoridad para el Financiamiento de la Vivienda de Puerto Rico, la Administración Federal de Hogares de Agricultores, la Federal Home Administration (FHA), la Administración de Veteranos de Estados Unidos y el Departamento de Desarrollo Económico y Comercio de Puerto Rico, y las entidades sucesoras de los antes mencionados, así como a favor de cualquier otra agencia o entidad estatal o federal que garantice préstamos hipotecarios que se aseguran y se venden en el mercado secundario.

Íd., Art. 4 (31 LPRA sec. 1858a).

[58] Art. 17 de la Ley Núm. 195-2011 (2011 Leyes de Puerto Rico 2237).

Expuesto lo anterior, veamos qué estatuto gobierna la ejecución de la sentencia en este caso y, por tanto, la protección que correspondía otorgar al recurrido.

### III

Money's sostiene que la Ley Núm. 195-2011 no rige en este caso porque la demanda se presentó en 1996. Más aún, arguye que el foro primario dictó la sentencia en el 2007. Alega que el Tribunal de Apelaciones erró al concluir que la Ley Núm. 195-2011 aplica dado a una escritura de hogar seguro de 2013 y que la sentencia se ejecuta con posterioridad a la promulgación del estatuto. Señala, además, que el foro intermedio incidió al ordenar una vista para dilucidar un derecho que ella nunca impugnó.

Por otro lado, el señor López Llanos argumenta que al aprobarse la Ley Núm. 195-2011, la peticionaria no había reclamado ningún derecho sobre su residencia principal ubicada en San Juan. Expuso que, por el contrario, la demanda estaba basada en un contrato de prenda de un pagaré garantizado por una hipoteca sobre un inmueble sito en el Municipio de Carolina, el cual no correspondía con la propiedad que fue subastada en la ejecución de la sentencia. Asimismo, alega que la escritura de hogar seguro sobre la propiedad que la peticionaria subastó es posterior a la Ley Núm. 195-2011 y previa a la solicitud de ejecución de la sentencia. Ante este escenario, el recurrido arguye que

> [s]e trata de que, luego de entrar en vigencia la Ley, se presentó ante el tribunal por primera vez una solicitud de embargo y reclamación sobre

la residencia principal del recurrido, por lo que, a la luz de lo anterior, entendemos que el Tribunal de Apelaciones actuó correctamente al concluir que la propiedad física de la residencia principal del recurrido goza de la protección y exención de ser embargada o ejecutada como pago de una deuda al amparo de la Ley Núm. 195 del 2011.[59]

Un examen de la cláusula de vigencia de la Ley 195-2011, *supra*, nos lleva a descartar la teoría argumentativa y las conclusiones del señor López Llanos durante el transcurso de la etapa de ejecución de la sentencia, la cual acogió finalmente el tribunal intermedio. La realidad es que la extensión que este quiere que demos a la cláusula de vigencia de la ley se aparta de lo que esta consigna de forma diáfana. De hecho, esta conlleva que independicemos la ejecución de una sentencia del propio caso que dio lugar a la misma. La única forma que podríamos acoger su teoría es si aplicamos retroactivamente al caso de autos las disposiciones de una ley que, ciertamente, en cuanto a su aplicación, erige lo opuesto.

No hay duda de que toda ley tiene que ser interpretada.[60] Ahora bien, cuando el estatuto es claro y no adolece de ambigüedad, estamos obligados a seguir lo dispuesto en sus palabras.[61] Por tal razón, el primer paso en la interpretación de una ley es remitirnos a su propio texto.[62] Entiéndase que "cuando el lenguaje de la ley no cree dudas, no es necesario

---

[59] *Alegato en oposición a certiorari*, pág. 11.

[60] Véase *Cordero v. ARPe*, 187 DPR 445, 455 (2012); *Asoc. FCIAS v. Caribe Specialty II*, 179 DPR 923, 938 (2010); *Pueblo v. Tribunal Superior*, 98 DPR 750, 751 (1970).

[61] Véase Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14.

[62] *Cordero v. ARPe*, 187 DPR 445, 456 (2012).

ir más allá de la letra de ésta para hallar la voluntad del legislador, sino que se debe descubrir y dar efecto a la intención según expresada en la propia letra del estatuto".[63] En esa tarea, como regla general, las palabras del estatuto deben entenderse en su uso más corriente.[64]

Debemos resaltar que, de ordinario, las leyes no tienen efecto retroactivo.[65] Para que así sea, es norma reiterada que el estatuto en cuestión debe disponerlo expresamente.[66] En otros términos, aunque hemos reconocido la excepción de la retroactividad, ——como acto excepcional—— esta tiene que manar claramente de la intención legislativa o hacerse constar diáfanamente en la ley.[67] Con este propósito, en la práctica, la mayoría de las piezas legislativas cuentan con una cláusula que regula su vigencia.

En el caso de autos no hace falta dirigirnos a la intención legislativa en otras partes de la ley para interpretar lo que quiso establecerse en el estatuto en cuanto a su aplicabilidad. La Ley Núm. 195-2011 es clara al disponer que **aplicará prospectivamente**.[68] Además, su propio texto instituye que "**[l]os casos que estén presentados** en el

---

[63] Íd.

[64] Art. 15 del Código Civil de Puerto Rico, 31 LPRA sec. 15.

[65] Art. 3 del Código Civil de Puerto Rico, 31 LPRA sec. 3.

[66] Íd.

[67] *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728,757-758 (2009). Véanse, además: *Nieves Cruz v. UPR,* 151 DPR 150, 158 (2000); *Vázquez v. Morales*, 114 DPR 822, 831 (1983).

[68] Esto lo reconoce, incluso, el señor López Llanos al expresar que "[n]o se trata de aplicar con carácter retroactivo la Ley Núm. 195 de 2011, lo que claramente está prohibido". *Alegato en oposición a certiorari*, pág. 11.

Tribunal antes de la vigencia de [la] Ley, […] le aplicará la protección de hogar seguro, según lo dispuesto en la Ley Número 87 de 13 de mayo de 1936". (Énfasis suplido).[69]

Ante este escenario, este caso lo que requiere es que examinemos si, en efecto, la ejecución de sentencia presentada luego de la vigencia de la Ley Núm. 195-2011 queda excluida por la frase "casos presentados" que utiliza su Art. 17, *supra*. Además, en virtud de los planteamientos del recurrido, debemos examinar qué significa la frase "cuando les sea aplicable" que contiene la disposición legal.

## IV

De acuerdo con la Regla 2 de Procedimiento Civil, 32 LPRA Ap. V, todo caso comienza con la presentación de la demanda en el tribunal.[70] Luego de esta etapa inicial y transcurrido el juicio, el tribunal dicta una sentencia la cual se archiva, registra y resuelve el litigio.[71] Así, una vez expiran los términos para apelar, la sentencia adviene firme.[72]

Precisamente, "[c]omo regla general, al convertirse en firme la sentencia se convierte también en ejecutoria".[73] Es

---

[69] Art. 17 de la Ley Núm. 195-2011 (2011 Leyes de Puerto Rico 2237).

[70] Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed. rev., San Juan, Ed. LexisNexis, 2017, pág. 2.

[71] Regla 42.1 de Procedimiento Civil, 32 LPRA Ap. V. Véanse, además: *Rivera v. Algarín*, 159 DPR 482, 489 (2003), citando a R. Hernández Colón, *Derecho procesal civil: Práctica jurídica de Puerto Rico*, San Juan, Ed. Michie, 1997.

[72] *Rivera v. Algarín*, supra, pág. 489, citando a R. Hernández Colón, *op. cit.*

[73] *Rivera v. Algarín*, supra, pág. 489.

decir, dictada la sentencia en la que definitivamente se adjudica el asunto litigioso, "procede su ejecución, una vez adviene firme, cuando la misma no se satisface por la parte, sin utilizar los medios coercitivos del Estado".[74] En vista de ello, la última etapa del proceso judicial se conoce como la ejecución de la sentencia.[75]

Conforme hemos reconocido, en esencia, esta etapa es una extensión o un apéndice del procedimiento que dio lugar a la sentencia.[76] Esto, habida cuenta de que se trata de una fase que se lleva a cabo para darle cumplimiento o eficacia al dictamen final y firme del tribunal.[77] Así pues, lejos de ser un caso nuevo o una cuestión litigiosa que surge posteriormente, la ejecución de la sentencia es una continuación del caso presentado y resuelto por el foro judicial.[78] Esta ejecutoria, especialmente cuando no se presenta de forma independiente al caso original, no

---

[74] J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da. ed., Publicaciones JTS, 2011, T. IV, pág. 1427.

[75] Hernández Colón, *op. cit.*, pág. 3.

[76] *Negrón v. Srio. de Justicia*, 154 DPR 79, 90 (2001) ("Estos procedimientos [(las ejecuciones)] constituyen una *prolongación o apéndice* del proceso que dio lugar a una sentencia, que en ocasiones deben realizarse para darle cumplimiento o eficacia a dicha sentencia").

[77] Íd., citando a *Igaravidez v. Ricci*, 147 DPR 1, 11 (1998) (Fuster Berlingeri, J., opinión concurrente). Véase, además, J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed. rev., San Juan, Publicaciones JTS, 2011, Tomo IV, págs. 1428-1429.

[78] *Negrón v. Srio. de Justicia*, supra, pág. 90 ("En un pleito, las actividades procesales ulteriores que se llevan a cabo luego del pronunciamiento judicial medular acomodan la realidad exterior al mandato del tribunal. L. Prieto-Castro y Ferrandiz, *Derecho Procesal Civil*, 2da ed., Madrid, Ed. Tecnos, 1974, Vol. II, pág. 157. No se trata de revivir las controversias resueltas entre las partes ni de modificar los derechos adjudicados. *Ortiz v. U. Carbide Grafito, Inc.*, 148 D.P.R. 860 (1999)"); Cuevas Segarra, *op. cit.*, pág. 1427 ("El procedimiento de ejecución de sentencia le impone continuidad a todo proceso judicial que culmina con una sentencia y hace necesaria la ejecución forzosa con el incumplimiento de la parte obligada con los términos de la sentencia").

constituye la presentación de una nueva reclamación judicial, sino la continuación de la ejercitada anteriormente.[79]

Cónsono con los principios de hermenéutica legal que ha adoptado este Tribunal, debemos advertir que, al excluir la aplicación de la Ley Núm. 195-2011, la Asamblea Legislativa se refirió "a los casos presentados" al momento de promulgarla. En ese sentido, el estatuto excluyó aquellas deudas que hubieran sido reclamadas judicialmente hasta ese momento, es decir, sobre las cuales ya hubiera una demanda presentada en los foros judiciales. En otros términos, esta estableció que la protección más amplia reconocida en la referida ley no se extendía a casos en los que se hizo una reclamación sobre el patrimonio del deudor antes de que entró en vigor. De esa forma no limitaría los bienes que podrían reclamarse o ejecutarse como parte de esta acreencia más allá de lo que disponía la Ley Núm. 87-1936.

Si bien el instrumento público para establecer la propiedad como residencia principal del recurrido se otorgó y se presentó al Registro de la Propiedad luego de la entrada en vigor de la Ley 195-2011, lo cierto es que esta ley no creó una excepción para estos escenarios. Tampoco exceptuó cuando la propiedad se reclama como parte del proceso de ejecución de sentencia. Para efectos de esta legislación, sería un contrasentido que separemos la ejecución de una sentencia del caso que dio lugar a ella. Ello, contrario con

---

[79] Véanse: *Municipio de San Juan v. Prof. Research*, 171 DPR 219, 248 (2007); *Negrón v. Srio. de Justicia*, supra.

lo que hemos establecido en cuanto a que la ejecución de la sentencia es una prolongación o apéndice ——continuación—— del caso que dio origen al mencionado evento post-sentencia. Además, es que la ejecución siempre es el evento que consuma el dictamen final en un caso. Concluir lo opuesto conllevaría un desfase jurídico y procesal en el cual el caso quedaría excluido teóricamente de la ley porque se instó antes de su vigencia, pero paradójicamente el estatuto aplicaría en la ejecución del dictamen en el mismo caso, por lo que aplicaría retroactivamente a este último.

La Ley 195-2011, *supra*, no limitó al promovente de una acción legal presentada antes de su aprobación. En su lugar, **lo que hizo fue aclarar que este podía reclamar sobre aquello que el ordenamiento permitía en virtud de, y sujeto a, las disposiciones de la Ley Núm. 87-1936, *supra*.**

Precisamente, en cuanto a la expresión "cuando les sea aplicable", su significado es más que obvio. Como la Ley Núm. 195-2011 no podía hacer que aplicara a un caso un estatuto que resultaba inaplicable conforme sus propias disposiciones, esta aclaró que la Ley Núm. 87-1936 regiría el asunto siempre que fuera aplicable y esta última, u otra ley, no excluyera la situación o reclamación de su propio alcance.

## V

En el caso de autos la demanda se presentó en **1996** y la reclamación fue adjudicada mediante sentencia en el año **2007**. Entiéndase que se trata de un caso que no solo fue presentado,

sino que fue resuelto a favor de la peticionaria antes de la promulgación de la Ley Núm. 195-2011. A pesar de que la peticionaria solicitó la ejecución de la sentencia luego del 2011, no podemos aplicar la Ley Núm. 195-2011 cuando no hay duda de que este es un caso que se incoó antes de que esta rigiera. Money's tenía facultad para ejecutar la sentencia y embargar el inmueble, conforme con las disposiciones de la Ley Núm. 87-1936. La reclamación del señor López Llanos, luego de subastada la propiedad, debía limitarse a que le garantizaran los $15,000 que protegía esta legislación. Como bien señala la peticionaria, no hacía falta ordenar que se celebrarae una vista para dilucidar si procedía consignar $15,000 a favor del recurrido y su esposa cuando esto no se había negado y, en efecto, se aceptó por Money's.

Asimismo, debemos notar que la acción ejercida por la peticionaria fue en cobro de dinero, no una ejecución de la hipoteca. Ello hacía impertinente si la cancelación de la hipoteca procedía o no. De hecho, esperar la calificación de un Registrador de la Propiedad, evidentemente no promueve la solución justa, rápida y económica que exigen nuestras reglas.

Por otro lado, cabe notar que, ante el incumplimiento del recurrido con lo pactado en la Corte de Quiebras, esta última levantó la paralización para permitir que se ejecutara la sentencia, y así se subastara el inmueble del señor López Llanos para satisfacer la deuda que persistía. De hecho, sobre este particular, la Corte Federal denegó el petitorio

posterior del recurrido para que se paralizara nuevamente la ejecución de la sentencia.

Ante estas circunstancias, es forzoso concluir que los primeros dos errores señalados fueron cometidos. En cuanto al tercer error que imputó Money's, el caso no amerita que nos expresemos sobre el mismo.

## VI

Por los fundamentos expuestos, resolvemos que la Ley Núm. 195-2011, *supra,* no aplica a casos presentados previo a su vigencia. Ello incluye los casos en que la ejecución de la sentencia se lleva a cabo luego de la promulgación del estatuto, si la demanda fue presentada con anterioridad a que este entrara en vigor. Como consecuencia, revocamos la sentencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

Edgardo Rivera García<br/>
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Money's People Inc.<br><br>Peticionario<br><br>v.<br><br>Pedro López Julia<br><br>Recurrido | CC-2017-0259 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2019.

Por los fundamentos expuestos en la opinión que antecede, los cuales se hacen formar parte de esta sentencia, resolvemos que la Ley Núm. 195-2011 no aplica a casos presentados previo a su vigencia. Ello incluye los casos en que la ejecución de la sentencia se lleva a cabo luego de la promulgación del estatuto, si la demanda fue presentada con anterioridad a que este entrara en vigor. Como consecuencia, revocamos la sentencia emitida por el Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo